# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
June 6, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CARL G. ROUSH,**
**Claimant Below, Petitioner**

**vs.)    No. 12-1519** (BOR Appeal No. 2047147)
                    (Claim No. 2010099562)

**JACKSON COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Carl G. Roush, by George Zivkovich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Jackson County Board of Education, by H. Dill Battle III, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated December 6, 2012, in which the Board affirmed an April 20, 2012, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 29, 2011, decision which denied the addition of stenosis cervical region, displaced cervical intervertebral disc without myelopathy, cervical spondylosis with myelopathy, and cervicalgia to the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon misstatements and mischaracterizations of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Mr. Roush, a custodian and maintenance worker, injured his cervical spine in the course of his employment when he fell off of a ladder, landed on a desk, and felt a snapping sensation in his neck on July 22, 2009. His claim was held compensable for sprain of the neck, sacroiliac, and lumbosacral regions. Prior to the compensable injury, Mr. Roush had no significant neck complaints. He was briefly treated for a pinched nerve in 2006 but the condition resolved with

1

minimal chiropractic treatment. On May 27, 2006, Mr. Roush was in a serious accident in which he collided with a four-wheeler while riding a motorbike. He sustained injuries to his face, arm, hand, and fingers. A cervical CT scan taken that day showed mild degenerative changes but nothing more. There was no injury to the cervical spine.

Following his 2009 work-related injury, Mr. Roush was treated by nurse practitioner Melischa Cowdery. Treatment notes from February to May of 2010 indicated Mr. Roush suffered from intermittent neck pain as well as numbness in his fingers. A cervical MRI taken on May 4, 2010, showed cervical disc herniations and spurs resulting in central spinal canal stenosis that was severe at C4-5, moderate to severe at C5-7, and moderate at C3-4. There was also compression and flattening of the spinal cord from C4-7 and significant right-sided foraminal stenosis at C5-7. Mr. Roush was referred to Houman Khosrovi, M.D., who diagnosed severe spinal stenosis, herniated cervical disc, and cervical spondylosis with myelopathy. He recommended surgery to treat the conditions. Mr. Roush underwent cervical spine surgery in May and June of 2010. The claims administrator denied authorization of the surgeries.

Christopher Fox, D.C., Mr. Roush's treating chiropractor, testified in a deposition on June 1, 2011. He stated that prior to the work-related injury, Mr. Roush was not treated for significant neck problems. He briefly treated him for cervical sprain/strain, but the symptoms were not significant and resolved with simple chiropractic treatment. The symptoms reoccurred as the result of the compensable 2009 injury and Mr. Roush's claim was held compensable for sprain of the neck, sacroiliac, and lumbosacral regions. Following that injury, chiropractic treatment failed to treat the symptoms. Dr. Fox stated that a cervical CT scan following the 2006 non-work-related accident showed mild degenerative changes and nothing more, and there were no signs of a neck injury. After the compensable injury, spinal surgery was the only option available to treat the symptoms because chiropractic treatment was not enough and Mr. Roush's MRI findings were severe. Dr. Fox opined that the work-related injury absolutely caused the herniated cervical discs.

The Office of Judges reversed the claims administrator's decision and authorized the cervical spine surgeries on October 19, 2011. It found that Dr. Fox's testimony was persuasive because it was unimpeached and supported by the treatment records. The Office of Judges determined that radiographic evidence shows that Mr. Roush's condition deteriorated dramatically following his occupational injury. It found that though degenerative changes existed prior to the occupational injury, the preponderance of the evidence shows that Mr. Roush did not have cervical disc herniations prior to the work-related injury. It stated that even if Mr. Roush experienced some minor neck symptoms prior to the work-related injury, they increased significantly in magnitude afterwards. Dr. Fox testified that the work-related fall could have caused the disc herniations and the Office of Judges agreed. It held that Mr. Roush was not barred from treatment simply because he had pre-existing degenerative changes. Mr. Roush thereafter requested that stenosis cervical region, displaced cervical intervertebral disc without myelopathy, cervical spondylosis with myelopathy, and cervicalgia, the conditions which the surgeries were authorized to treat, be added to his claim. The claims administrator denied that request on August 29, 2011.

2

The Office of Judges affirmed the claims administrator's decision denying the addition of the requested diagnoses to the claim in its April 20, 2012, Order. It determined that a preponderance of the evidence shows that the conditions did not develop in the course of or as the result of Mr. Roush's compensable injury. It looked to West Virginia Code of State Rules § 85-20-37.8 (2006), which states that comorbidities may be associated with a higher incidence of persistent symptoms but are not compensable conditions. The Office of Judges relied on a July 19, 2011, physician review by Prasadarao Mukkamala, M.D., in which he recommended denying the addition of the diagnoses to the claim. He opined that spinal stenosis results from degenerative changes in the short pedicles but is not compensable. He also stated that displacement of the cervical intervertebral disc without myelopathy is simply an extension of the degenerative process, which was present in this case before the work-related injury. Lastly, Dr. Mukkamala opined that the diagnosis of cervical spondylosis is a degenerative condition and should not be held compensable. The Office of Judges determined that Dr. Mukkamala's opinion was persuasive because it was in accordance with West Virginia Code of State Rules § 85-20-37.8. Further, cervicalgia, which means "neck pain", is a symptom and not an occupational injury. Finally, the Office of Judges noted that a previous October 19, 2011, Office of Judges' decision authorizing surgery in this case specifically declined to add any additional conditions to the claim beyond sprain of the neck, sacroiliac, and lumbosacral regions. Jackson County Board of Education was merely held responsible for the aggravation of Mr. Roush's pre-existing conditions directly caused by his occupational injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order in its December 6, 2012, decision.

The decision of the Board of Review is based upon material misstatements and mischaracterizations of the evidentiary record. First, it is noted that the Office of Judges relied on a provision of West Virginia Code of State Rules § 85-20 (2006) that does not apply to the instant case. West Virginia Code of State Rules § 85-20-37.8 pertains to lower back strains/sprains, not cervical spine sprains/strains. The cited provision is not duplicated in West Virginia Code of State Rules § 85-20-35 (2006) which addresses cervical spine sprains/strains.

The Office of Judges mischaracterized the October 19, 2011, Office of Judges' decision. The Office of Judges in the instant case merely noted that the October 19, 2011, decision did not hold any additional conditions compensable. While that is correct, the October 19, 2011, decision also determined that radiographic evidence shows that Mr. Roush's condition deteriorated dramatically following his occupational injury. The Office of Judges found that though degenerative changes existed prior to the occupational injury, the preponderance of the evidence shows that Mr. Roush did not have cervical disc herniations prior to the work-related injury. It stated that even if Mr. Roush experienced some minor neck symptoms prior to the work-related injury, they increased significantly in magnitude afterwards. Dr. Fox testified that the work-related fall caused the disc herniations and the Office of Judges agreed.

The Office of Judges in the instant case also erred by holding that Dr. Mukkamala's opinion was persuasive. Dr. Mukkamala stated in his physician review that all of the requested conditions were the result of degenerative changes and nothing more. However, Dr. Fox testified that prior to the work-related injury, Mr. Roush was not treated for significant neck problems.

3

Dr. Fox briefly treated him for cervical sprain/strain but the symptoms were insignificant and resolved with simple chiropractic treatment. The symptoms reoccurred as the result of the compensable 2009 injury. Following that injury, chiropractic treatment was no longer able to resolve the symptoms. After the 2009 injury, spinal surgery was the only option available to treat the symptoms because chiropractic treatment was not enough and Mr. Roush's MRI findings were severe. Dr. Fox opined that the work-related injury absolutely caused the herniated cervical discs. Dr. Fox's opinion was found to be persuasive by the Office of Judges in its October 19, 2011, decision. His opinion is supported by the evidentiary record in this case.

Finally, emergency room reports after the 2006 non-work-related accident do not indicate that Mr. Roush sustained any type of injury to his cervical spine. A cervical CT scan following the accident noted mild degenerative changes and nothing more. After the 2009 work-related injury a CT scan revealed cervical disc herniations and spurs resulting in central spinal canal stenosis that was severe at C4-5, moderate to severe at C5-7, and moderate at C3-4. It also showed compression and flattening of the spinal cord from C4-7 and significant right-sided foraminal stenosis at C5-7. The evidentiary record clearly shows that the requested diagnoses are the direct result of the compensable injury and are compensable components of the claim.

For the foregoing reasons, we find that the decision of the Board of Review is based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is reversed and remanded with instructions to hold the claim compensable for stenosis cervical region, displaced cervical intervertebral disc without myelopathy, cervical spondylosis with myelopathy, and cervicalgia.

Reversed and Remanded.

**ISSUED:   June 6, 2014**

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II